BURNETT et al. v. GIBBS.  (No. 8771.)

(Court of Civil Appeals of Texas. Ft. Worth. May 26, 1917.)

1. LANDLORD AND TENANT ⬅77 — LEASE — ORAL ASSIGNMENT—CONSIDERATION.

Where a lease provided that the lessor at any time might forfeit the lease upon nonpayment of rents, and further secured the lease moneys by lien upon the stock and' properties owned by the lessees situated upon the property, payment of all amounts due and overdue under the lease was consideration for a verbal assignment of the lease by the lessees to one who advanced the money to pay the rent due.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 232.]

2. LANDLORD AND TENANT ⬅80½ — EVIDENCE—SUFFICIENCY.

In an action involving conflicting claims to a ranch in which plaintiff claims under a written assignment of a lease, and defendant claims under an alleged previous verbal assignment, evidence *held* to show a sufficient verbal assignment to defendant in consideration of his payment of all amounts due under the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 231.]

3. LANDLORD AND TENANT ⬅80½—LEASE—ASSIGNMENT—NOTICE TO LANDLORD.

Evidence *held* to show that the lessor had notice of the defendant's acquisition of the remainder of the term of the lease and impliedly consented thereto.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 231.]

4. LANDLORD AND TENANT ⬅77 — LEASE — ORAL ASSIGNMENT—PRESUMPTION.

Where the consideration for the verbal assignment of a lease was the payment of all amounts due thereunder, the fact that the assignee subsequently deducted such amount as a part of the expense of a transaction in cattle by assignor and assignee for which assignee had paid all expenses will not alter the effect of the verbal assignment, but the appellate court must presume that when the settlement was made the expenses, including the item that assignee had paid lessor for the lease, were deducted from the sale price of the cattle in accordance with the agreement between assignor and assignee in the absence of evidence to the contrary.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 232.]

Appeal from District Court, Knox County; J. H. Milam, Judge.

Suit for injunction between T. H. Burnett and others and W. H. Gibbs. From the decree, T. H. Burnett and others appeal. Affirmed.

Brookreson & Howell, of Benjamin, for appellants. J. A. Wheat, of Seymour, for appellee.

CONNER, C. J. This controversy arises out of conflicting claims to what is known as the Ward ranch in Knox county, comprising some 12,357 acres of land. The claim of appellants rests upon a written assignment of a five-year lease made by the owner, Ward, to M. Davis and his son, C. C. Davis, which expires on the 1st day of September, 1917. The original lease to Davis & Son contained a provision that the premises should not be sublet during the term of the lease, but the assignment of the lease to appellant, which was executed on the 17th day of March, 1917, by M. Davis & Son, had indorsed thereon the consent of the owner in the following terms: "I, W. T. Ward, hereby agree to the foregoing assignment of this lease.

"[Signed]              W. T. Ward."

Appellee claimed the right of possession under an alleged verbal assignment of the premises from M. Davis & Son during the last days of October, 1916.

The court denied appellants' prayer for an injunction restraining appellee from the use of the premises, and granted the prayer of appellee for an injunction restraining appellants from interfering in any manner with appellee's possession.

[1] The case as presented to us is substantially one of fact only, or perhaps it would be more accurate to say that the only

material question presented on this appeal is whether the evidence is legally sufficient to support the judgment of the court in favor of appellee's title as asserted and alleged by him in his answer. We think the question must be answered in the affirmative.

It is undisputed that Ward was the owner of the premises in controversy, and as such that he leased the ranch to M. Davis & Son for a period of five years ending on the 1st day of September, 1917. It is also undisputed, as alleged, that Davis & Son undertook to assign their lease to appellants on the 17th day of March, 1917, and that Ward consented thereto as evidenced by his indorsement, which we have quoted. Testimony favorable to appellee, however, is to the effect that some time in October, 1916, the son, C. C. Davis, who was in charge of the ranch, found himself unable to secure the money with which to pay the year's lease then overdue some two months, and that he approached the appellee, stating that he was going down to Ft. Worth to attend the Fat Stock Show, and that if he could not get the money that appellee could have the pasture. Appellee testified that later C. C. Davis phoned him from Ft. Worth that:

"I can't get a cent. If you want that pasture, go to it. * * * I can't find the old man anywhere."

Appellee thereupon, as C. C. Davis, according to appellee's testimony, had theretofore in substance proposed, advanced to Ward, the owner, the lease money for the entire year, together with accrued interest for the overdue time, plus also some $17 Ward claimed as a balance on the previous year, and took over and went into possession of the pasture for the unexpired time of the lease. The clear implication from appellee's testimony is that the lease was then assigned to him in consideration of having paid Ward the amounts so due from Davis & Son. It cannot be said that there was no consideration accruing to Davis & Son for the lease executed by them to Ward, provided that Ward at any time might forfeit the lease upon nonpayment of rents, and further secured the lease moneys by lien upon the stock and properties owned by Davis situated upon the ranch, and it was at least apparently to the interest of Davis & Son to be relieved of these burdens.

[2] It further appears that soon after appellee took over the ranch he purchased certain cattle and placed them upon the ranch, and that C. C. Davis remained thereon and fed and assisted in later marketing the cattle. Davis testified that the original agreement with appellee was that appellee should pay the amounts due on the lease contract to Ward, and that they would go "in cahoots" for the remainder of the term, and that it was pursuant to this understanding that appellee later bought the cattle, which were marketed at a profit of some $3,000, which was equally divided between appellee and Davis & Son. But appellee denies any such agreement. His testimony is to the effect that, inasmuch as Davis was upon the ranch having horses and other things adapted to the purpose, he agreed with Davis to buy the cattle, feed them, and market them, and give to Davis as a mere working interest one-half of the net profits that might arise out of the business. The court heard the parties on this issue and determined it in appellee's favor, and we must accept the conclusion.

[3] Appellants insist that the owner, Ward, did not give his consent to the subletting agreement under which appellee claims, and that therefore it is invalid, but we think appellee's evidence tends to show very strongly that Ward had notice of appellee's acquisition of the remainder of the Davis term, and impliedly consented thereto. Appellee testified to the effect that upon receipt of the phone message from C. C. Davis while in Ft. Worth he called up Mr. Ward and informed him that he wanted to pay the amount due for the remainder of the term. Ward would not consent to receive the money without appellee's agreement to pay interest and back rents, as hereinbefore stated. To this appellee at first demurred on the ground that he was getting the pasture but for ten months, but finally agreed to pay the amounts demanded by Ward, who thereupon drew a draft upon appellee having notation of what it was for; that this check went through the bank of which one of the appellants was a working member. Appellee went into immediate possession of the ranch, and we think it evident from the testimony that both Ward and appellants knew of appellee's assertion of title, and there is no evidence that Ward at any time ever objected to the subletting to appellee. It further appears that appellants have not thus far paid to Davis & Son the consideration promised by them for the conveyance. Appellants therefore in no event can claim to be innocent purchasers for value.

There is a further contention in behalf of appellants arising out of the fact that upon the sale of the cattle referred to appellee as part of the expense of that transaction deducted the sum that he had theretofore paid Ward as lease money. This circumstance, however, we do not think can be held to alter the effect of the verbal assignment of the lease to appellee. So far as the record discloses, this deduction may have been in strict accord with the agreement between appellee and Davis for the feed and sale of the cattle purchased by appellee. Appellee without dispute, so far as the testimony shows, purchased and paid for the cattle and purchased and paid for the feed and advanced all moneys necessary to the accomplishment of the undertaking, and we must presume that when the settlement was made that the expenses, including the item that appellee had paid Ward for the lease, were deducted from the sale price of the cattle in accordance

with the agreement between Davis and appellee; for there is no evidence, as we construe it, indicating otherwise. At least there is certainly no evidence that Davis made any objection at the time. True, it is a circumstance that may tend to support Davis' claim that appellee paid the lease moneys to Ward pursuant to the agreement, as he states it, between appellee and him to go in "cahoots," but as such the circumstance is by no means conclusive.

We conclude that the judgment must be affirmed; and it is so ordered.